# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

June 24, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

| | |
|---|---|
| Nos. 07-3605 & 08-1224 | Appeals from the United States District Court for the Western District of Wisconsin |
| DENNIS HECKER, *et al.*, | |
| *Plaintiffs-Appellants*, | |
| | No. 06 C 719 |
| *v.* | |
| | **John C. Shabaz**, *Judge*. |
| DEERE & COMPANY, FIDELITY MANAGEMENT TRUST CO., and FIDELITY MANAGEMENT & RESEARCH CO., | |
| *Defendants-Appellees.* | |

**O R D E R**

Appellants filed their Petition for Panel Rehearing and Petition for Rehearing En Banc on March 9, 2009. Appellee Deere & Company and Appellees Fidelity Management Trust Company and Fidelity Management & Research Company filed their Answers to the Petition on April 6, 2009. In addition, three *amicus curiae* briefs in support of rehearing or rehearing *en banc* were filed in conjunction with the Petition: one from the Secretary of Labor (filed March 20, 2009), one from the AARP and other groups (filed March 18, 2009), and one from a group of law professors (filed March 20, 2009). No judge[1] asked for a vote on the petition for rehearing *en banc*, and all members of the panel have voted to deny the petition for rehearing, with the following addition to the original opinion, *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009):

The Secretary of Labor has made a number of points in her *amicus* brief that deserve a

---

[1] Judge Joel M. Flaum and Judge Ilana Diamond Rovner took no part in the consideration of this matter.

brief response. First, she argues that the panel has erred by failing to give appropriate deference to her interpretation of the regulation implementing 29 U.S.C. § 1104(d), 29 C.F.R. § 2550.404c-1. But, as the Secretary herself acknowledges, the panel did not ignore any language in the regulation proper. Instead, it did not give the weight that the Secretary believes is due to some language in a footnote to the preamble to the regulation. (We are speaking here of the version of the regulation that was in force at the time relevant to this suit; it should go without saying that the Secretary is free to propose and enact new regulations addressed more specifically to the way in which choice of investment options in a plan relates to the safe harbor provision, if she believes that this would be appropriate.) In her brief, the Secretary explains that she presently "interprets her regulation to mean that, even if the plan otherwise qualifies as a section 404(c) plan, the fiduciary is not relieved by 404(c) from liability for plan losses resulting from the imprudent selection and monitoring of an investment option offered by the plan . . . ." As support for that statement, she cites 56 Fed. Reg. 10724, 10732 n.21 (Mar. 13, 1991); DOL Opinion Letter No. 98-04A, 1998 WL 326300 at *3 n.1 (May 28, 1998); DOL Information Letter to Douglas O. Kant, 1997 WL 1824017 at *2 (Nov. 26, 1997) (Kant Letter). This is enough, she asserts, to make that proposition a rule, entitled to deference under *Chevron USA Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984), rather than a more informal statement of administrative practice, entitled only to respect under the standards of *United States v. Mead Corp.,* 533 U.S. 218, 229-30 (2001), which in turn relies on *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944).

With respect, we cannot agree with the Secretary that the footnote in the preamble is entitled to full *Chevron* deference. The panel did defer to the Secretary's concerns, to the extent that it refrained from making any definitive pronouncement on "whether the safe harbor applies to the selection of investment options for a plan." *Hecker,* 556 F.3d at 589. Instead, as we explain further in this order, we left this area open for future development, whether on the basis of a different set of pleadings, or on the basis of a regulation directed to this issue. The Secretary admits that the panel's primary holding – that there was no duty to scour the market to find the fund with the lowest imaginable fees, and that the fees themselves in the Funds identified in the complaint could not be deemed imprudent because they were offered at the same prices to the general public – does not call into question the validity of even the preamble to the Secretary's regulation, much less the regulation taken as a whole. Thus, her real quibble is with the panel's alternate holding that the complaint the court was evaluating contained enough information to warrant the conclusion that Deere was entitled to the safe harbor defense. In our view, the Secretary's concern is more hypothetical than real. She fears that some case in the future may arise in which a Plan fiduciary acts imprudently by selecting an overpriced portfolio of funds, and that this opinion will somehow immunize the fiduciary from accountability for that decision.

The panel's opinion, however, stands for no such broad proposition. It was limited to the complaint before the court, as supplemented by the materials the panel found were properly before the district court. Applying the pleading standards enunciated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), we concluded that these plaintiffs failed to state a claim for the

kind of fiduciary misfeasance the Secretary describes. At the time we wrote, the Court had not yet handed down *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). *Iqbal* reinforces *Twombly*'s message that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. The Court explained further that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)." *Id.* at 1950.

The Secretary also fears that our opinion could be read as a sweeping statement that any Plan fiduciary can insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them. She is right to criticize such a strategy. It could result in the inclusion of many investment alternatives that a responsible fiduciary should exclude. It also would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives. The panel's opinion, however, was not intended to give a green light to such "obvious, even reckless, imprudence in the selection of investments" (as the Secretary puts it in her brief). Instead, the opinion was tethered closely to the facts before the court. Plaintiffs never alleged that any of the 26 investment alternatives that Deere made available to its 401(k) participants was unsound or reckless, nor did they attack the BrokerageLink facility on that theory. They argued – and especially in their Petition for Rehearing they continue to argue – that the Plans were flawed because Deere decided to accept "retail" fees and did not negotiate presumptively lower "wholesale" fees. The opinion discusses a number of reasons why that particular assertion is not enough, in the context of these Plans, to state a claim, and we adhere to that discussion.

We add another point that was raised earlier but that we did not mention in the opinion: the complaint is silent about the services that Deere participants received from the company-sponsored plans. It would be one thing if they were treated exactly like all other retail market purchasers of Fidelity mutual fund shares; it would be quite another if, for example, they received extra investment advice from someone dedicated to the Deere accounts, or if they received other extra services. If the Deere participants received more for the same amount of money, then their effective cost of participation may in fact have approached wholesale levels. We return, therefore, to the general point made in the opinion: *this* complaint, alleging that Deere chose *this* package of funds to offer for its 401(k) Plan participants, with this much variety and this much variation in associated fees, failed to state a claim upon which relief can be granted.

We therefore DENY the Petition for Rehearing and Petition for Rehearing *En Banc*.